UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ALABAMA SPACE SCIENCE EXHIBIT COMMISSION d/b/a U.S. SPACE & ROCKET CENTER,** } } } } | |
| **Plaintiff-Counterclaim Defendant,** } } | |
| v.  } } | Case No.:  5:14-CV-00413-MHH |
| **ODYSSEIA CO., LTD.,** } } | |
| **Defendant-Counterclaim-Plaintiff.** } | |

## MEMORANDUM OPINION AND ORDER

This declaratory judgment action began in state court.  Plaintiff Alabama Space Science Exhibit Commission d/b/a U.S. Space and Rocket Center or ASSEC believes that the case should remain in a state forum.  For a second time, ASSEC has asked the Court to remand the action to state court.  ASSEC argues that the Court lacks subject matter jurisdiction over this action because ASSEC is not a citizen for purposes of diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(2).[1]  The Court disagrees.

---

[1] ASSEC previously argued that defendant Odysseia Co., Ltd., a Korean limited company, removed the action improperly because the amount in controversy did not meet 28 U.S.C. § 1332(a)'s $75,000 jurisdictional threshold.  The Court rejected ASSEC's arguments on this point and denied ASSEC's original motion to remand.  (*See* Docs. 28, 30).

In its first motion to remand, ASSEC did not challenge diversity of citizenship.  (*See* Doc. 8-1, p. 2).  Nevertheless, ASSEC's second motion to remand is timely because if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

As the Court explained in its order denying ASSEC's first motion to remand, diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (2) citizens of a State and citizens or subjects of a foreign state . . ." 28 U.S.C. § 1332(a)(2); *see also Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse, and the amount in controversy must exceed $75,000, 28 U.S.C. § 1332(a).") (citations omitted). ASSEC contends that it is not a citizen for purposes of § 1332 because it is an arm of the State of Alabama. "[I]f a party is deemed to be 'an arm or alter ego of the State,' then diversity jurisdiction must fail;" however, a "public entity or political subdivision of a state, unless simply an 'arm or alter ego of the State'" is "a citizen of the state for diversity purposes." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) (quoting *Moor v. Alameda Cnty.*, 411 U.S. 693, 717-718 (1973)). The Court's task then is to determine whether ASSEC is an arm or alter ego of the State of Alabama.

---

remanded." 28 U.S.C. § 1447(c); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court held a hearing on ASSEC's second motion to remand. A court reporter was present, and a transcript is available upon request.

"Although the question of diversity jurisdiction is distinct from that of immunity," the Court must conduct an Eleventh Amendment immunity analysis to determine whether ASSEC is an arm or alter ego of the State of Alabama "for the purpose of diversity jurisdiction." *Univ. of S. Ala.*, 168 F.3d at 412; *see also Coastal Petroleum Co. v. U.S.S. Agri-Chemicals, A Div. of U. S. Steel Corp.*, 695 F.2d 1314, 1318 (11th Cir. 1983). To determine whether ASSEC is an "arm of the state" for Eleventh Amendment immunity purposes, the Court considers the following factors: "(1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Nichols v. Alabama State Bar*, 815 F.3d 726, 732 (11th Cir. 2016); *see also Lightfoot v. Henry Cty. School Dist.*, 771 F.3d 764, 769 (11th Cir. 2014); *Manders v. Lee*, 338 F. 3d 1304, 1309 (11th Cir. 2003.

"The issue of whether an entity is an 'arm of the state' for Eleventh Amendment purposes is ultimately a question of federal law. But the federal question can be answered only after considering provisions of state law." *Manders*, 338 F.3d at 1309. When determining whether a state entity is entitled to Eleventh Amendment immunity, "the most important factor is how the entity has been treated by state courts." *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1292 (11th Cir. 2012). The Court has located no opinion in which an

3

Alabama state court has determined whether ASSEC is an arm of the state entitled to Eleventh Amendment immunity. Therefore, the Court turns its attention to the remaining Eleventh Amendment immunity factors.

### A. Degree of Control the State Maintains Over ASSEC

The Alabama legislature established ASSEC by statute in 1965 to operate the U.S. Space and Rocket Center. Ala. Code §§ 41-9-430 – 4-9-439. The enabling statute provides:

> There is hereby created and established a state agency to be known as the Alabama Space Science Exhibit Commission, which shall be a public body corporate with all the powers and privileges of a corporation, for the purpose of providing for and participating in the management and control of facilities to house and display such visual exhibits of space exploration and hardware used therefor as may be made available by the National Aeronautics and Space Administration. Such facility shall constitute a permanent housing for the National Aeronautics and Space Administration exhibit, which shall be open to the general public and shall be located at a place to be designated and made available in Madison County for a nominal cost through the cooperation of the Department of the Army or at such other locations as the commission may deem appropriate.

Ala. Code § 41-9-430. The State empowered ASSEC to engage in activities to maintain the U.S. Space & Rocket Center, and the State granted to ASSEC numerous independent powers. *See generally* Ala. Code § 41-9-432.[2]

---

[2] During the hearing on ASSEC's second motion to remand, counsel for ASSEC conceded that the State delegated broad powers to the Commission. Counsel stated, "Again, I stand here and tell you that the powers that are delegated to Alabama Space Science Exhibit Commission are very broad. I think when you read through that legislation, there is no way I could tell you we have very limited powers period." (Tr. p. 5).

When the Alabama legislature created ASSEC, it retained little control over the public corporation, choosing instead to vest ASSEC with significant fiscal and managerial autonomy.[3] The first sentence of the enabling statute explains that ASSEC "shall be a public body corporate with all the powers and privileges of a corporation . . . ." Ala. Code § 41-9-430. The State of Alabama maintains some limited control over ASSEC; however, for the most part, ASSEC operates like a private corporation.

For example, ASSEC makes its own hiring and employment decisions. Alabama Code § 41-9-432(13) states:

> [ASSEC] shall be authorized: . . . [t]o employ an executive director and such additional personnel as may be necessary to accomplish the purposes of this article. The executive director and such additional personnel as may be employed by [ASSEC] will serve at the pleasure of [ASSEC]. [ASSEC] shall fix the compensation of the executive director, and such additional personnel and such compensation shall be paid from the funds of [ASSEC]. [ASSEC] shall designate the duties and authority of the executive director and such additional personnel. . . .

*Id.* Although the Governor appoints the public corporation's 18 members (i.e. directors in corporate lingo) and may remove any member "for just cause," *see* Ala. Code § 41-9-431, this limited state oversight is not dispositive. *Tex. Dep't of*

---

[3] Enactment by a state legislature does not automatically mean that a state agency is an "arm or alter ego of the State" for purposes of diversity jurisdiction. *See, e.g.*, *Coastal Petroleum Co.*, 695 F.2d at 1318; *C.H. Leavell & Co.*, 424 F.2d 764, 765-67 (5th Cir. 1970) (holding that the Board of Commissioners of the Port of New Orleans, a state agency created by the state legislature, was "a sufficiently separate entity from the State of Louisiana to sustain diversity jurisdiction").

*Housing Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 927 (5th Cir. 1995), *partially overruled on other grounds by Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 412 n.19 (5th Cir. 2009) (holding that the state-created agency with directors appointed by the governor was a citizen for purposes of, and subject to, the federal court's jurisdiction).

ASSEC independently manages most financial matters affecting the Commission. For example, ASSEC is liable for obligations related to revenue bonds that the Commission issues. *See* Ala. Code § 41-9-435 ("All revenue bonds issued by [ASSEC] shall be solely and exclusively the obligations of [ASSEC] and shall not create an obligation or debt of the state or of any county or of any municipality within the state."). Additionally, "general obligation bonds shall also be payable from and secured by a pledge of the revenues and income of [ASSEC] remaining after the payment of the reasonable and necessary expenses of operating and maintaining the facilities to be constructed by [ASSEC]." Ala. Code § 41-9-434.

The state's role in ASSEC's financial matters is extremely limited. The Governor must approve ASSEC's decision to sell or issue "interest-bearing general obligation bonds not in excess of $1,900,000.00 in principal amount as authorized by constitutional amendment," and these bonds are "general obligations of the State of Alabama." Ala. Code § 41-9-432(5). Otherwise, ASSEC may raise,

borrow, and allocate funds without State approval or oversight. *See* Ala. Code § 41-9-432(4);[4] Ala. Code § 41-9-432(8);[5] Ala. Code § 41-9-432(11);[6] Ala. Code § 41-9-436(1).[7] "[ASSEC]'s relative independence in controlling its operations and managing its finances" demonstrates that ASSEC, not the State of Alabama, is the real party in interest in this action. *See Tex. Dep't of Housing & Cmty. Affairs*, 68

---

[4] ASSEC is authorized to:

> borrow money from private sources or such other sources as may be acceptable to [ASSEC] under such terms and conditions as may be provided by law and, in order to provide security for the repayment of any such private loans, to pledge such future revenues from admissions and any other sources as may from time to time be necessary or desirable.

Ala. Code § 41-9-432(4).

[5] ASSEC is authorized to:

> make such contracts in the issuance of its bonds as may seem necessary or desirable to assure their marketability and to provide for their retirement by a pledge of all or any revenue which may come to [ASSEC] from the investment of the proceeds of the sale of such bonds or from any other source whatsoever.

Ala. Code § 41-9-432(8).

[6] ASSEC may "allocate and expend funds from all donations, income and revenue from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities." Ala. Code § 41-9-432(11).

[7] ASSEC:

> shall have, in addition to the power and authority enumerated in Section 41-9-432, the right, power and authority to: . . . [d]evelop and institute a program of promotion and advertising of the exhibits and facilities provided for by this article, said program of promotion and advertising to be conducted by [ASSEC] both within and without the state in such manner and to such extent as may be deemed economically advisable and appropriate by [ASSEC].

Ala. Code § 41-9-436(1).

F.3d at 928; *compare Nichols*, 815 F.3d at 732 (holding that the Alabama State Bar is an arm of the State in part because "[t]he State Bar's collection of fees is authorized by the Alabama legislature, those fees are deposited into the state treasury and can be spent only as appropriated by the Alabama legislature, and the Alabama Department of Finance supervises the State Bar's finances.").

In addition to its relative financial independence, ASSEC is legislatively authorized to contract in its own name. *See* Ala. Code § 41-9-432(3).[8] Indeed, ASSEC, and not the State of Alabama, entered into the contract that forms the basis of this litigation. (*See* Doc. 1-1, p. 3, ¶ 9 ("Effective March 20, 2006, the ASSEC and Odysseia entered into an agreement, called an Offer to Enter into Licensing Agreement (the 'Option'), pursuant to which Odysseia was to pay ASSEC certain fees and to engage in certain activities related to the potential development of a Space Camp® program in South Korea. . .")).

ASSEC also owns the property at issue – the Space Camp® program. *See* Ala. Code § 41-9-432(15) (providing that ASSEC is authorized "[t]o expend funds

---

[8] ASSEC is authorized to:

> enter into such contracts and cooperative agreements with the local, state and federal governments, with agencies of such governments, including the Department of the Army and the National Aeronautics and Space Administration, with private individuals, corporations, associations and other organizations as [ASSEC] may deem necessary or convenient to carry out the purpose of this article, such contracts and agreements to include leases to private industry[.]

Ala. Code. § 41-9-432(3).

of [ASSEC] in the development, operation, promotion and expansion of the programs and activities of [ASSEC] including the franchising, nationally and internationally, of the United States Space Camp, a youth science program developed and owned by [ASSEC]"). Because ASSEC entered into the contract at issue and owns the property that is the subject of this dispute, this lawsuit does not affect a "state contract or property right." *Armory Comm'n of Alabama v. Staudt*, 388 So. 2d 991, 993 (Ala. 1980); *see also Coastal Petroleum Co.*, 695 F.2d at 1318 (holding that a state agency was a citizen for purposes of diversity jurisdiction when the "state [] vested title of the" property at issue in the agency); *Tex. Dep't of Housing & Cmty. Affairs*, 68 F.3d at 928 (recognizing that the state agency's "power to enter into its own contracts" weighed in favor of finding that the agency was subject to diversity jurisdiction in federal court); *compare Centraal Stikstof Verkoopkantoor, N.A. v. Ala. State Docks Dep't*, 415 F.2d 452, 457 (5th Cir. 1969) (finding that a state agency was an alter ego of the State of Alabama in part because the legislation creating the agency allowed the agency to "develop and harbor facilities in the name of the State," and "title to all property vests in the State of Alabama").[9]

---

[9] *Centraal Stikstof Verkoopkantoor* is binding in this Circuit. *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

With respect to property, ASSEC can acquire, sell, convey, transfer, mortgage, lease, or donate property in its own name without approval from the State of Alabama. *See* Ala. Code § 41-9-432(10) (ASSEC is authorized "[t]o acquire property by purchase, lease, gift or license, such power not to include the purchase of a site for the facility"); Ala. Code § 41-9-432(12) (ASSEC is authorized "[t]o sell, convey, transfer, mortgage, lease, or donate any property, franchise, grant, easement, license or lease or interest therein which it may own and to transfer, assign, sell, mortgage, convey, or donate any right, title or interest to which it may have in any lease, contract, agreement, license, or property").

Beyond having property rights, ASSEC can sue and be sued in its own name as evidenced by ASSEC filing this action on its own. In addition to this action, ASSEC is or has been a party-defendant in a number of actions in this judicial district. *See Parker v. Alabama Space Science Exhibit Commission*, 2:15-cv-40-AKK; *Stroik v. U.S. Alabama Space Exhibit Commission*, No. 5:10-cv-00071-CLS; *Mullin v. Alabama Space Science Exhibit Commission; et al.*, No. 5:99-cv-00301-UWC. Citing a letter dated November 25, 2014 from the Commission's procurement manager to outside counsel explaining that the Legislative Contract Review Oversight Committee had approved a contract between the Commission and outside counsel in this case, ASSEC argues that the State of Alabama oversees this litigation. (Doc. 35-1). The critical point though is that ASSEC engaged

outside attorneys to represent it in this lawsuit; the Alabama Attorney General's Office does not represent ASSEC. *See C.H. Leavell & Co.*, 424 F.2d at 767 (in holding that the state agency at issue was subject to diversity jurisdiction in federal court, the court noted that the state agency had engaged its own counsel "rather than being represented by the State's legal officer, the Attorney General").

Because ASSEC hires its own personnel; raises and spends money with limited State oversight; contracts in its own name; owns property, including the property at the center of this lawsuit; can sue and be sued in its own name; and is not limited to representation by the State Attorney General's Office, the Court finds that ASSEC operates like a private corporation and is an entity separate from the State of Alabama. *Dep't of Health and Rehab. Servs., State of Fla. v. Davis*, 616 F.2d 828, 833 (5th Cir. 1980) ("There is . . . authority in this Circuit to support jurisdiction in a diversity suit between a state agency and a citizen of another state where the agency is invested with the power to sue and be sued, and possesses generally recognized corporate powers."); *Texas Dep't of Housing and Cmty Affairs*, 68 F.3d at 928 ("[T]he fact that the agency had the authority to hold and use property, the authority to sue and be sued in its corporate name, the power to enter into its own contracts, and the power to make its own hiring decisions, and the fact that it managed its own finances and was responsible for its own debts weigh in favor of finding that THA is an independent agency.").

## B.   Where the Entity Derives its Funds

The record indicates that ASSEC derives most, if not all, of its funds from sources other than the State treasury.  The enabling legislation neither requires the State to appropriate funds to ASSEC nor suggests that the State might do so under certain circumstances.  The enabling legislation authorizes ASSEC to raise money to support its operations.  For example, ASSEC is legislatively authorized to "accept public or private gifts, grants and donations."  Ala. Code § 41-9-432(9).  The statute also empowers ASSEC to operate concessions at the U.S. Space & Rocket Center to provide revenue.  Ala. Code § 41-9-436(3).[10]  And ASSEC derives revenue from the operation of lodging facilities at the Space and Rocket Center.  See Ala. Code § 41-9-435.[11]

---

[10] ASSEC:

> shall have, in addition to the power and authority enumerated in Section 41-9-432, the right, power and authority to: . . . [o]perate itself or, in its discretion enter into lease agreement with a person or agency of its choosing to operate, all concessions located in or on the grounds and facilities operated by [ASSEC], any such lease agreement to be so designated as to provide maximum services and convenience to the patrons of the exhibit center and to provide reasonable revenue return to [ASSEC].

Ala. Code § 41-9-436(3).

[11] Ala. Code § 41-0-435 provides in relevant part:

> All revenue bonds issued by the commission for the purpose of providing lodging facilities shall be payable solely out of the revenues and receipts derived from the operation, leasing or sale by the commission of such lodging facilities . . . .

*Id.*

In 2014, the U.S. Space & Rocket Center was the top tourist attraction in the State for which visitors paid admission fees. (Doc. 41, p. 8; Tr. p. 5).[12] Information that ASSEC publishes on its website demonstrates that the Commission raises significant revenue from, among other sources, admission and special camp fees, membership packages, souvenirs and other merchandise, and facility rentals.[13]

### C. Who is Responsible for Judgments Against the Entity

ASSEC's enabling statute does not state explicitly whether ASSEC or the State of Alabama is responsible for judgments against the Commission; however, ASSEC has its own treasury and may "allocate and expend funds from all

---

[12] *See also* U.S. Space & Rocket Center is Top paid tourist attraction in 2014, AL.com (Feb. 4, 2015) http://www.al.com/business/index.ssf/2015/02/alabama_tourism_attractions_in.html.)

[13] See http://www.spacecampstore.com/Museum-Admission-Museum-Admission/ (children's admission to the museum is $15.00 and adult admission is $23.00); http://www.spacecamp.com/space/camp (summer 2016 week long space camp fees range from $949.00 per person to $1049.00 per person); http://www.spacecamp.com/aviation/machI (summer 2016 aviation challenge fees are $949.00 per person); http://www.spacecamp.com/robotics (summer 2016 week long robotics camp fees are $649.00 person); http://rocketcenter.com/membership (explaining membership options ranging from $30.00 to $1,000.00); http://www.spacecampstore.com/ (providing links to purchase space apparel and accessories, space toys, space collectibles and gifts, space books, DVDs, and posters, space souvenirs, and camp gear); http://rocketcenter.com/specialevents/eventspaces (providing rental fee rates for corporate classrooms, training facilities, shuttle park, main exhibit area, Apollo Courtyard, Apollo Terrace, digital theater, and Saturn V Hall).

The Court takes judicial notice of these facts from the U.S. Space & Rocket Center website because the information "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2); *see also Coleman v. Dretke*, 409, F.3d 665, 667 (5th Cir. 2005) (finding that a previous panel did not err in taking judicial notice of a state agency website); *In re Everglades Island Boat Tours, LLC*, 484 F. Supp. 2d 1259, 1261 (M.D. Fla. 2007) (taking judicial notice of state agency website).

donations, income and revenue from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities . . . ." Ala Code. § 41-9-432(11).  This provision suggests, and ASSEC has not disputed, that the Commission, and not the State of Alabama, is responsible for judgments against ASSEC.  The Court has no information before it to suggest that any entity other than ASSEC would be responsible for paying a judgment against the Commission.  Accordingly, the Court finds that a judgment against ASSEC would not "adversely affect the state treasury." *Staudt*, 388 So. 2d at 994; *but see Nichols*, 815 F.3d at 732-33 (11th Cir. 2016) ("Judgments against the State Bar will be paid out of its state treasury fund, but only 'as budgeted and allotted' by the Alabama legislature, potentially affecting the treasury as a whole.") (internal citation omitted).

## II. CONCLUSION

On the record before it, the Court concludes that ASSEC is not an arm of the State of Alabama.  Rather, ASSEC is "a separate and distinct entity from the state." *Coastal Petroleum Co.*, 695 F.2d at 1318.  Therefore, ASSEC is a citizen for purposes of diversity of citizenship jurisdiction, and ASSEC and Odysseia are completely diverse.[14]  Accordingly, the Court **DENIES** ASSEC's second motion to

---

[14] The Court recognizes that its holding that ASSEC is not an arm of the State conflicts with a recent decision from the Middle District of Alabama. *See Ingalls v. U.S. Space & Rocket Center*, 2015 WL 4528687, at *6 (M.D. Ala. July 27, 2015) (finding that ASSEC was entitled to

remand.  By separate order, the Court will set a briefing schedule on ASSEC's motion to dismiss Odysseia's counterclaim.  (*See* Doc. 43).

    **DONE** and **ORDERED** this August 19, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

Eleventh Amendment immunity because "the Commission operates as arm of the State"). *Ingalls* is not binding on this Court. *See Am. Elec. Power Co. v. Conn.*, 131 S. Ct. 2527, 2540 (2011) (explaining that "federal district judges, sitting as sole adjudicators, lack authority to rend precedential decisions binding other judges, even members of the same court"); *Camreta v. Greene*, 563 U.S. 692, n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)).  The Court does not challenge the wisdom of the *Ingalls* holding; however, the Court, on the record that the parties have presented regarding ASSEC's second motion to remand, finds that ASSEC is not an arm of the State.

The Court's holding that ASSEC is not an arm of the State is consistent with a recent decision from another judge on this court.  *See Parker v. Alabama Space Science Exhibit Commission*, 2:15-cv-40-AKK (Doc. 12) (denying ASSEC's motion to dismiss and finding that ASSEC is not an arm of the State of Alabama for sovereign immunity purposes).