# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALABAMA SPACE SCIENCE** | } | |
| **EXHIBIT COMMISSION d/b/a** | } | |
| **U.S. SPACE & ROCKET CENTER,** | } | |
| | } | |
| **Plaintiff,** | } | **Case No.:  5:14-cv-00413-MHH** |
| | } | |
| **v.** | } | |
| | } | |
| **ODYSSEIA CO. LTD.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case has been to the moon and back.  After lengthy briefing on repeated motions to remand (three so far) and multiple mediations, including one before a magistrate judge, the case now has reached the dispositive motion stage.[1]  In its summary judgment motion, the Alabama Space Science Exhibit Commission – ASSEC, for short – renews its challenge to federal jurisdiction.  ASSEC reiterates its argument that it is an arm of the State of Alabama and hence not a "citizen of a State" for purposes of diversity jurisdiction under 28 U.S.C.§ 1332(a)(2).  ASSEC rests its updated remand argument on evidence that is new to the record in this case but that has been available to ASSEC since it filed its first motion to remand.

---

[1] *See* Docs. 8, 20, 35, 69, 91.

ASSEC also adds to its legal authority in support of its request for remand a recent decision from the Alabama Supreme Court. Because a district court must examine its subject matter jurisdiction at every stage of a case, the Court will evaluate ASSEC's supplemental evidence and authority and reconsider its rulings on subject matter jurisdiction.[2]

## PROCEDURAL BACKGROUND

### 1. ASSEC's First Motion to Remand

In its first motion to remand, filed in 2014, ASSEC argued that Odysseia removed this action improperly because the amount in controversy in this action does not meet the $75,000 jurisdictional threshold in 28 U.S.C. § 1332(a). (Doc. 8). In its initial remand motion, ASSEC did not "dispute that diversity of citizenship exists in this matter." (Doc. 8, p. 2). During a January 12, 2015 hearing regarding the amount in controversy, ASSEC stated: "we're ready to just move forward with this case . . . We think it's time to get to the merits." (Doc. 30, p. 2). The Court

---

[2] *See RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC*, 718 F.3d 1308, 1313 (11th Cir. 2013) ("Federal courts operate under a continuing obligation to inquire into the existence of subject matter jurisdiction whenever it may be lacking.").

rejected ASSEC's challenge to the amount in controversy and denied ASSEC's motion to remand. (Docs. 28, 30).

### 2. ASSEC's Second Motion to Remand

In its second motion to remand, filed in 2015, ASSEC argued that the Court lacks subject matter jurisdiction because ASSEC is an arm of the state and therefore is not a citizen for purposes of diversity jurisdiction. (Doc. 35). The Court issued an order in which the Court evaluated the evidence available to it concerning ASSEC's relationship to the State of Alabama and concluded that ASSEC is not an arm of the state. (Doc. 52). The Court held that ASSEC is a citizen of Alabama for purposes of diversity jurisdiction and that because Odysseia is a citizen of a foreign state, the parties to this action are completely diverse. The Court denied ASSEC's second motion to remand. (Doc. 52, pp. 14-15).

### 3. ASSEC's Third Motion to Remand

In its third motion to remand, filed in 2017, ASSEC argued that in an unpublished opinion in *Ingalls v. U.S. Space and Rocket Center*, 679 Fed. Appx. 935 (11th Cir. 2017), the Eleventh Circuit Court of Appeals implied that ASSEC is a state agency. (Doc. 69, pp. 1-2). The *Ingalls* decision did not alter this Court's analysis of ASSEC's citizenship because in *Ingalls*, the Eleventh Circuit did not consider the factors necessary to evaluate whether ASSEC is an arm of the state. (Doc. 72, p. 3). Based on the evidence then in the record, the Court maintained its

finding that ASSEC is not an arm of the State of Alabama. The Court denied ASSEC's third motion to remand. (Doc. 72, p. 4).

**4. ASSEC's Fourth Motion to Remand**

In its motion for summary judgment, on "a more developed record," ASSEC argues again that it is an arm of the State of Alabama and therefore is not a "'citizen of a State' for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(2)." (Doc. 89, p. 1). The Court will discuss all of the jurisdictional evidence, old and new (again, new to the Court, not to ASSEC), as it evaluates the factors that govern its assessment of ASSEC's status for purposes of federal jurisdiction.

## JURISDICTIONAL ANALYSIS

As the Court has explained in previous orders, "if a party is deemed to be 'an arm or alter ego of the State,' then diversity jurisdiction must fail;" however, a "public entity or political subdivision of a state, unless simply an 'arm or alter ego of the State'" is "a citizen of the state for diversity purposes." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) (quoting *Moor v. Alameda Cty.*, 411 U.S. 693, 717-18 (1973)). To determine whether ASSEC is an "arm of the state," the Court must consider: "(1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Nichols v. Ala. State Bar*, 815 F.3d 726, 732 (11th Cir. 2016); *see also Lightfoot v. Henry Cty. School Dist.*, 771

F.3d 764, 769 (11th Cir. 2014); *Manders v. Lee*, 338 F. 3d 1304, 1309 (11th Cir. 2003).  The Court discusses each factor in turn.

### 1.  Alabama Law Regarding ASSEC's Status

The Court looks again to the Alabama Code and to decisions from the Alabama Supreme Court to consider how Alabama law characterizes ASSEC.

In its 2016 order denying ASSEC's motion to remand, the Court stated that it had located no opinion in which an Alabama state court had determined whether ASSEC is an arm of the state.  (Doc. 52, pp. 3-4).  That is still true, but the Court has located dicta in which the Alabama Supreme Court indicated that ASSEC's sister entity, the Alabama Space Science Exhibit Finance Authority, is not an arm of the State of Alabama.  In *Hospital Systems, Inc. v. Hill Rom, Inc.*, the Alabama Supreme Court held that the Health Care Authority of Athens and Limestone County is an entity separate from the State of Alabama even though the Health Care Authority bears some of the characteristics of an arm of the state.  *Hospital Systems, Inc. v. Hill Rom, Inc.*, 545 So. 2d 1324, 1326 (Ala. 1989).  In reaching its decision, the Alabama Supreme Court analogized the Health Care Authority to the Alabama Space Science Exhibit Finance Authority.

The Alabama Supreme Court discussed the Health Care Authority's status as part of the court's consideration of the extent to which the Health Care Authority

had to comply with Alabama's Competitive Bid Law. The provision of the bid law at issue in *Hill Rom* provided:

> All expenditures of funds of whatever nature for labor, services or work, or for the purchase of materials, equipment, supplies or other personal property made by ... *the county commissions and the governing bodies of the municipalities of this State* ... shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder....

545 So. 2d at 1326 (emphasis in *Hill Rom*). The Alabama Supreme Court determined that the Alabama Legislature separately incorporated the Health Care Authority and other public entities like the Alabama Space Science Exhibit Finance Authority so that those entities could function independent of state and local authorities. The Alabama Supreme Court explained that the Health Care Authority, which the Supreme Court referred to as the "Hospital," was:

> incorporated pursuant to the provisions of Code 1975, § 22–21–310 *et seq*. It is "a separate entity from the state and from any local political subdivision, including a city or county within which it is organized" (*Opinion of the Justices,* 254 Ala. 506, 511, 49 So. 2d 175, 180 (1950)); therefore, it is not one of the governmental entities within the contemplation of the prohibitions of § 22 of our state constitution or § 41–16–50(a). Furthermore, the § 22–21–335 exemption would apply to the Hospital even if the directors of the Hospital's board were appointed by either the governing body of the City of Athens or that of Limestone County. *Alabama State Florists Association v. Lee County Hospital Bd.,* 479 So. 2d 720 (Ala.1985).

> The exemption from the Competitive Bid Law enjoyed by the Hospital is "part and parcel" of legislation creating and maintaining public authorities in Alabama. See, for example, § 4–3–60 (airport authorities); § 11–54A–17 (downtown redevelopment authorities); §

41–10–212 (Alabama Shakespeare Festival Theatre Finance Authority); and *§ 41–10–331 (Alabama Space Science Exhibit Finance Authority).* The necessity for the services provided by the Hospital and other health care authorities, *as well as the services provided by the myriad of boards and authorities authorized by our state legislature*, is undisputed.

It is, however, equally true that the governmental entities normally responsible for providing these services too often lack sufficient funds to justify the expenditure of city or county tax revenues in these areas. Thus, the "authority," through its separate existence, provides the required service with funds obtained from sources other than the tax revenues of a governmental entity.

545 So. 2d at 1326 (emphasis added).

The Alabama Supreme Court's description of the Health Care Authority applies equally to ASSEC and to its sister entity, the Alabama Space Science Exhibit Finance Authority or ASSFA. The legislation creating ASSFA states:

It is the intent of the Legislature, by the passage of this article, to authorize the incorporation of a public corporation for the purposes of acquiring land, constructing and equipping facilities, leasing such facilities to [ASSEC] (or others, to the extent provided for herein), and providing financing therefor, and to vest such corporation with all powers, authority, rights, privileges and titles that may be necessary to enable it to accomplish such purposes. This article shall be liberally construed in conformity with the purpose herein stated.

Ala. Code § 41-10-301. The legislation creating the ASSEC states:

There is hereby created and established a state agency to be known as the Alabama Space Science Exhibit Commission, which shall be a public body corporate with all the powers and privileges of a corporation, for the purpose of providing for and participating in the management and control of facilities to house and display such visual

> exhibits of space exploration and hardware used therefor as may be
> made available by the National Aeronautics and Space Administration.

Ala. Code § 41-9-430.[3]  Like the Health Care Authority in *Hill Rom*, ASSFA and ASSEC work in tandem as public corporations to raise money and provide services to the citizens of Alabama "with funds obtained from sources other than the tax revenues of a governmental entity."  *Hill Rom*, 545 So. 2d at 1326.

Toward this end, the Alabama Legislature has conferred on ASSEC broad, substantial powers that resemble powers held by private corporations.  Among other things, ASSEC may:

- enter contracts with "private individuals, corporations, associations and other organizations;"

- borrow money "from private sources . . . as may be acceptable to the commission under such terms and conditions as may be provided by law and, in order to provide security for the repayment of any such private loans, to pledge such future revenues from admissions and any other sources;"[4]

---

[3] *See Stallings & Sons, Inc. v. Ala. Bldg. Renovation Fin. Auth.*, 689 So. 2d 790, 792-93 (Ala. 1997) ("'It has been repeatedly held that a public corporation is an entity separate and distinct from the State, and that debts of such corporation are not debts of the State, within the purview of Section 213.' *Opinion of the Justices,* 270 Ala. 147, 148, 116 So. 2d 588 (1959). In *Edmonson v. State Industrial Development Authority,* 279 Ala. 206, 210, 184 So. 2d 115, 119 (1966), this Court said: 'Bonds issued by a public corporation that is a *separate entity* from the State will not constitute a new debt of the State within the meaning of Section 213, as amended.' (Emphasis added.) See also *Knight v. West Alabama Environmental Improvement Auth.,* 287 Ala. 15, 246 So. 2d 903 (1971). 'A public corporation is a separate entity from the state and from any local political subdivision.' *Coxe v. Water Works Bd.,* 288 Ala. 332, 337, 261 So. 2d 12 (1972).").

[4] Significantly, the Alabama Legislature has provided that these private loans would be backed by ASSEC revenues, not by the State of Alabama.  Ala. Code § 41-9-432 (4).

- sell, mortgage, lease, or transfer "any property, franchise, grant, easement, license or lease or interest therein which it may own and to transfer, assign, sell, mortgage, convey or donate any right, title or interest which it may have in any lease, contract, agreement, license or property;"[5]

- "allocate and expend funds from all donations, income and revenue from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities in such manner as may be necessary and appropriate for the perfection of the purposes of this article;"

- and spend ASSEC funds "in the development, operation, promotion and expansion of the programs and activities of the commission including the franchising, nationally and internationally, of the United States Space Camp, a youth science program developed and owned by the commission."

Ala. Code § 41-9-432 (3), (4), (11), (12), & (15).

The private contracts that ASSEC may enter are contracts like the ones at issue in this litigation: a $1.75 million contract for the opportunity to obtain a Space

---

[5] Significantly, the Alabama Legislature has provided that ASSEC may own property, franchises, and licenses, and, as noted below, the Alabama Legislature has provided specifically that ASSEC owns the Space Camp® program at issue in this litigation. Ala. Code § 41-9-432 (_), (15); *see also* Doc. 1-1, p. 3, ¶ 7 (ASSEC complaint alleging that ASSEC holds title to the registered trademarks at issue in this litigation), and *Stallings & Sons,* 689 So. 2d at 793 (in determining that the Alabama Building Renovation Finance Authority was not an arm of the state, the Alabama Supreme Court weighed the fact that the Authority "holds title to the property it is charged with maintaining and, in effect, has rights separate from the state, affecting that property and those rights are subject only to the dissolution of the Authority. The conveyance in Section 41–10–470, Ala. Code 1975, provides that the Authority 'shall be invested with all rights and title that the State of Alabama had in the property conveyed [the real property on which the following buildings are located: the Alabama State House, the Folsom Administrative Building, the Public Health Building, the former Judicial Building, the Public Safety Building, the Archives and History Building, and the State Office Building], thereby, subject to the right of reverter to the state upon dissolution of the authority.'"). Like ASSEC, ASSFA may "acquire and hold title" to personal property. Ala. Code § 41-10-307 (5). ASSFA also may "acquire and hold title" to real property. Ala. Code § 41-10-307 (5).

Camp® license.  (Doc. 1-3).  ASSEC has described some of its private business activities this way:

> Since the beginning of the Space Camp® and Aviation Challenge® programs, ASSEC has partnered with groups around the world to bring the Space Camp® and Aviation Challenge® experiences to youth outside of the United States.  ASSEC licenses the Space Camp® and Aviation Challenge® trademarks, designs, processes, and materials to select groups outside of the United States.

(Doc. 1-1, p. 3, ¶ 8).  As indicated, ASSEC has its own treasury where, according to the Alabama Legislature, ASSEC should hold the proceeds from these private contracts and all other revenues that ASSEC generates.  Ala. Code § 41-9-432 (11). The contract documents at issue in this litigation indicate that if Odysseia had obtained a Space Camp® license, then the company would have had to make license payments to ASSEC by direct deposit to an AmSouth bank account in ASSEC's name.  (Doc. 1-3, p. 10).[6]

In addition to contract revenues, ASSEC may accept private gifts, grants, and donations.  Ala. Code § 41-9-432 (9).  The Alabama Legislature has expressly authorized ASSFA and ASSEC to convey real property between themselves to accomplish the overall purpose of housing NASA exhibits, Ala. Code § 41-10-322, and the Legislature has provided that the statutes authorizing the existence and work

---

[6] Although the Alabama Legislature has not expressly given ASSEC the right to open bank accounts, the Legislature has empowered ASSFA to do so.  Ala. Code § 41-10-307 (10).  The license contract that ASSEC and Odysseia were negotiating indicates that the depository account that Odysseia would have used is in ASSEC's name.  (Doc. 1-3, p. 10).

of ASSFA and ASSEC should be "construed liberally" to enable the entities to accomplish the tasks assigned to them, Ala. Code §§ 41-9-439, 41-10-301.

Consistent with the Alabama Supreme Court's expectations for public corporations like the Health Care Authority, ASSFA, and ASSEC, ASSEC operates primarily "with funds obtained from sources other than the tax revenues of a governmental entity." *Hill Rom*, 545 So. 2d at 1326. ASSFA and ASSEC report their income and expenses jointly. (Doc. 88-11).[7] For 2015, less than 3% of ASSEC/ASSFA's revenue came from the State of Alabama. More than 80% of revenue came from "Sales & Charges for Services." (Doc. 88-11, p. 13). By directive of the Alabama Legislature, that revenue funds the salaries of the executive director and other personnel of ASSEC. Ala. Code § 41-9-432 (13) ("The commission shall fix the compensation of the executive director, and such additional personnel and such compensation shall be paid from the funds of the commission.").

Citing *Ex parte Greater Mobile Washington Cty. Mental Health-Mental Retardation Bd., Inc.*, 940 So. 2d 990 (Ala. 2006), ASSEC argues that its enabling legislation evidences its status as a state agency because § 41-9-430 incorporates the term "state agency." (*Compare* Doc. 35, p. 3; *with* Doc. 90, p. 15). In *Greater*

---

[7] For FY 2015, ASSEC's accountant prepared joint financial statements for "the Alabama Space Science Exhibit Commission (a component unit of the State of Alabama), the Alabama Space Science Exhibit Financial Authority (a component unit of the State of Alabama), and the U.S. Space & Rocket Center Education Foundation (a nonprofit organization), collectively ASSEC/ASSFA . . ." (Doc. 88-11, p. 6).

*Mobile*, the Alabama Supreme Court explained that when a court examines a public entity's status, "[w]e have previously noted as pertinent, but not determinative, that the legislation creating or authorizing the entity in question expressly characterizes the entity as an agency of the State." *Greater Mobile*, 940 So. 2d at 1005 (citing *State Docks Comm'n v. Barnes,* 225 Ala. 403 (1932), *Deal v. Tannehill Furnace & Foundry Comm'n*, 443 So. 2d 1213 (Ala.1983)*, Tallaseehatchie Creek Watershed Conservancy District v. Allred*, 620 So. 2d 628 (Ala. 1993), and *Stallings & Sons*, *Inc. v. Ala. Bldg. Renovation Fin. Auth.*, 689 So. 2d 790 (Ala. 1997)).

Thus, ASSEC's enabling statute's reference to ASSEC as a "state agency" is "pertinent" to the Court's analysis but "not determinative." In *Greater Mobile*, the Alabama Supreme Court went on to explain that an entity may not be an arm of the state, even though the statute creating the entity characterizes the entity as an "agency of the State." 940 So. 2d at 1001. What matters, the Alabama Supreme Court explained, is the "complete relationship" between the State of Alabama and the entity at issue. *Greater Mobile*, 940 So. 2d at 1001 ("Having examined 'the complete relationship' between the State and the Authority, the Court concluded that it was 'clear that the Authority was created as a separate entity' and 'not as an arm of the State,' despite the fact that the legislation creating it expressly declared that it was 'an agency of the State.'") (quoting *Stallings & Sons*, 689 So. 2d at 792); *see*

*also Deal*, 443 So. 2d at 1216 ("state agency" label does not determine whether an entity is an arm of the state).

In *Greater Mobile*, the Alabama Supreme Court also explained that an entity's ability to sue and be sued is "strongly probative" that the Alabama Legislature intended to create an entity separate from the state. *Greater Mobile*, 940 So. 2d at 1005. The Alabama Supreme Court stated:

> We have held that language in the empowering statute providing that the subject entity has the power "to sue and to be sued" is strongly probative of "the intent of the legislature to create a separate entity rather than an agency or arm of the state," *Stallings & Sons*, 689 So. 2d at 792. We have stated that such language is "incompatible with the constitutional immunity with which state agencies are cloaked," *Wassman* [*v. Mobile County Communications Dist.*, ]665 So. 2d [941,] 943 [(Ala. 1995)]; *Rodgers* [*v. Hopper*,] 768 So. 2d [963,] 967 [(Ala. 2000)].

*Greater Mobile*, 940 So. 2d at 1005. ASSEC filed this lawsuit; ASSEC is merely fighting Odysseia's effort to litigate this matter in federal court rather than state court. At the request of ASSEC (Doc. 98-1, pp. 7-8), the state Attorney General's Office has appointed the law firm that represents ASSEC in this lawsuit. (Doc. 98-1).

ASSEC argues that the Alabama Supreme Court's recent opinion in *Barnhart v. Ingalls*, 2018 WL 6074918 (Ala. Nov. 21, 2018), indicates that the Alabama Supreme Court views ASSEC as a state agency. (Doc. 99). The argument is partially accurate and mostly incomplete. In *Barnhart*, the Alabama Supreme Court

*assumed* that ASSEC was a state agency; the Alabama Supreme Court did not examine evidence regarding the status of ASSEC relative to the State of Alabama. The defendants, officers of ASSEC, argued that they should be absolutely immune from claims against them in their official capacities for retrospective benefit payments. *Barnhart*, 2018 WL 6074918 at \*6. The Alabama Supreme Court explained an action against a state officer in effect is an action against the state if a result favorable to a plaintiff would "directly affect a contract or property right of the State," the state officer "is simply a 'conduit'" for the recovery of damages from the State, or "a judgment against the officer would directly affect the financial status of the State treasury." *Barnhart*, 2018 WL 6074918 at \*6 (internal citations omitted); *see also Barnhart*, 2018 WL 6074918 at \*9 ("whether an action nominally asserted against a State official [is] truly one against the State" often turns partially or entirely on "whether any damages that might be awarded would flow from the State"). Had the Alabama Supreme Court examined evidence relating to those three factors and had that evidence been consistent with the evidence in the record in this action, the evidence would have revealed that ASSEC's contract rights belong to ASSEC, not the State of Alabama (*see* p. 8 above; Ala. Code § 41-9-432 (3)), and a judgment against ASSEC for damages would be paid from ASSEC's treasury, not from Alabama's state treasury.

Significantly, in *Barnhart*, ASSEC has taken the position that "the legislation pursuant to which the Commission was created [] removed the Commission from the purview of certain state employment laws, including the benefit statutes." *Barnhart*, 2018 WL 6074918 at *2. When the Alabama Department of Examiners of Public Accounts told ASSEC that the it (ASSEC) had not complied with state law concerning longevity bonuses and paid holidays, ASSEC notified the Department of Examiners that it disagreed with the audit findings, and ASSEC refrained from providing longevity bonuses or paid holidays. *Barnhart*, 2018 WL 6074918 at *2. *Barnhart* is a class action by current and former ASSEC employees who hope to compel ASSEC to provide the benefits that the Department of Examiners identified.[8]

In sum, both the relevant provisions of the Alabama Code and Alabama case law support the conclusion that ASSEC is not an arm of the Stare of Alabama.

## 2. ASSEC Operates with Very Little State Control

For the most part, ASSEC operates like a private corporation. As noted above, ASSEC owns the Space Camp® program. Ala. Code § 41-9-432 (15). ASSEC

---

[8] In that regard, Alabama Code § 41-9-437(13) states that ASSEC's "executive director and such additional personnel shall not be subject to the provisions of the state Merit System Act; provided, however, that they shall be eligible for participation in the state health insurance plan and benefits as provided in Sections 36-29-1 through 36-29-12, and they shall be eligible for participation in the State Employees' Retirement System under the provisions of Section 36-27-6 governing counties, cities, towns and other quasi-public organizations of the state." The Department of Examiners cited Alabama Code § 36-6-11(a) for the proposition that ASSEC must pay annual longevity bonuses. *Barnhart*, 2018 WL 6074918 at *1. Alabama Code § 41-9-437(13) does not mention Alabama Code § 36-6-11(a).

franchises that program nationally and internationally.  Ala. Code § 41-9-432 (15).

ASSEC advertises its products "within and without the state."  Ala. Code § 41-9-436

(1).  As noted above and in previous opinions, ASSEC can acquire, sell, convey,

transfer, mortgage, lease, or donate property in its own name without approval from

the State of Alabama.  (Doc. 52, p. 10).  "All revenue bonds issued by the

commission shall be solely and exclusively the obligations of the commission and

shall not create an obligation or debt of the state . . ."  Ala. Code § 41-9-435.

According to the ASSEC/ASSFA financial statement for fiscal years 2015 and 2016,

"ASSEC/ASSFA prepares an internal operations budget for management purposes,

which is not subject to state approval." (Doc. 88-11, p. 23).  The financial statement

explains that in preparing the budget for fiscal year 2016, ASSEC/ASSFA, like a

private business, considered the economic horizon:

> [ASSEC/ASSFA] considered many factors when setting the FY
> 2016 budget.  These factors include the economy of both the United
> States and foreign countries, continued introduction of year-round
> schools, spending restrictions on public schools, and the ability of
> the reporting units to successfully market products to consumers.
> These factors taken into consideration required a modest growth in
> anticipated revenue with a focus on controlling labor, cost of goods
> sold, and outside services costs.

(Doc. 88-11, p. 14).  ASSEC's position in the *Barnhart* case illustrates that ASSEC,

like a private corporation, actively avoids state control.

Because ASSEC receives a small portion of its funding from the State of

Alabama, it has reporting obligations to the state.  Ala. Code § 41-9-437.  And

because ASSEC receives a small portion of its funding from the State of Alabama, ASSEC may take advantage of certain benefits like the opportunity to request state-appointed counsel.  (Doc. 98-1).  But ASSEC operates independently of the State so that "through its separate existence," it may provide benefits to citizens of the State of Alabama through the programs that ASSEC operates "with funds obtained from sources other than the tax revenues of a governmental entity."  *Hill Rom*, 545 So. 2d at 1326.

### 3. Most of ASSEC's Funds are not Appropriated by the State of Alabama

As discussed above and as the Court previously has found, ASSEC generates most of its funding through its business operations.  (Doc. 52, p. 6).  According to the ASSEC/ASSFA combined financial statement for fiscal year 2015, ASSEC/ASSFA had $26,260,069 in operating revenues and $28,162,502 in total revenues.  (Doc. 88-11, p. 12).  Of that total, $25,918,114 came from "Sales & Charges for Services;" $1,131,155 came from "Operating Grants & Contributions;" $532,028 came from "State of Alabama Appropriation;" $1,086,316 came from lodging tax; and $618,829 came from capital contributions."  (Doc. 88-11, p. 13).[9]

---

[9] ASSEC can pay its expenses with the revenue that ASSEC generates from its business operations. For fiscal year 2015, ASSEC/ASSFA had approximately $28 million in total operating expenses. (Doc. 88-11, pp. 13-14).  Of that amount, ASSEC/ASSFA had $5,856,507 in expenses for Space Camp.  (Doc. 88-11, p. 13).  ASSEC/ASSFA had $13,264,916 in expenses for "Personnel Services."  (Doc. 88-11, p. 14).

A comment in the ASSEC/ASSFA financial statement for fiscal years 2015 and 2016 makes clear that ASSEC and ASSFA operate a business, and that business uses a relatively small appropriation from the state Education Trust Fund to provide programs to Alabama teachers and students.[10] According to the financial statement:

> Operating revenues for FY 2016 increased by $5,495,528 over FY 2015 due to an increase in revenue for all the major revenue lines of business. Most notably, camp programs, merchandise and other sales increased by 15%. In addition, operating grants grew by 145% in support of NASA's Sally Ride EarthKam payload in the Space Racers Saturday morning cartoon effort supported with a NASA grant. Operating expenses for FY 2016 increased proportionally to the growth in revenue. It should also be noted, the State of Alabama appropriations from the Education Trust Fund increased by $371,973.[11] This increase provided additional programs for Alabama educators and students.

(Doc. 88-11, p. 12).

Information in the State of Alabama Executive Budget report is in accord with ASSEC/ASSFA's financial report for fiscal years 2015 and 2016. The Executive Budget report indicates that for fiscal year 2015, ASSEC received $26,420,591 from "Admissions/Sales/Miscellaneous," $1,046,000 from "Lodging Tax," and $582,348 from the Education Trust Fund. (Doc. 87-11, p. 284).[12]

---

[10] ASSEC's 2015 appropriation from the Education Trust Fund of $533,028 is small relative to ASSEC/ASSFA's overall revenues for 2015 of more than $28 million and relative to the Education Trust Fund's appropriations to other entities in 2015. For 2015, the Alabama Education Trust Fund appropriated a total of more than $5.91 billion to dozens of entities. (Doc. 87-11, pp. 28-30).

[11] The narrative portion of the financial statement states the increase was $371,973, but the accounting portion of the statement indicates an increase of $317,973. (Doc. 88-11, pp. 12-13).

[12] The State of Alabama reported that ASSEC had total receipts of $28,028,939 for fiscal year

ASSEC asserts that it is an arm of the state because its "finances are entrenched in the State of Alabama's budgeting process from start to finish." (Doc. 90, p. 18). ASSEC states that it "submits its budget goals to Alabama's Department of Finance annually"; it "updates the Department quarterly" on its [ASSEC's] financial status; the Department of Finance considers requests from ASSEC "when helping the Governor prepare the annual executive budget;" the Governor reports ASSEC's financial status "as a 'discretely presented component unit'" in an annual financial report; ASSEC's financial books may be audited by the Alabama Department of Examiners of Public Accounts; and "the State includes ASSEC's total receipts, regardless of the source, within the Education Trust Fund." (Doc. 90, pp. 20-21). These reporting obligations and the state's accounting practices do not alter the fact that most of the revenue that ASSEC reports comes from its business operations, not the State of Alabama. Those business operations concern the marketing and sale of products that ASSEC owns independently.

As for ASSEC's contention that its funds are state funds because "Executive Budget Office records reflect that the State keeps all of ASSEC's income in the

2015, and ASSEC used more than $13 million of its receipts to fund personnel costs and employee benefits for 346 employees. (Doc. 87-11, p. 284). According to the state report, for fiscal year 2015, ASSEC spent more than $1 million for outside professional fees and services and just over $800,000 to service ASSEC's debt. (Doc. 87-11, p. 284). Given the fact that the data in the ASSFA/ASSEC fiscal year 2015 financial statement and the data in the State Executive Budget report regarding 2015 is virtually identical, it appears that the State of Alabama follows ASSEC's lead and combines the operating expenses and revenues of ASSEC and ASSFA.

Education Trust Fund as earmarked funds," (Doc. 90, p. 22), the record confirms that the State of Alabama Executive Budget report indicates that ASSEC's revenues are held in the Education Trust Fund as "earmarked funds." (Doc. 87-11, p. 29). But if the State of Alabama is requiring ASSEC to place commission revenues in the Education Trust Fund and if the State regards those revenues as state funds rather than funds belonging to ASSEC, then the State's conduct appears inconsistent with state law which states that ASSEC's "funds from all donations, income and revenue from any source whatsoever" should come into "its [i.e. ASSEC's] treasury." Ala. Code § 41-9-432 (11).

Based on its assertion that ASSEC's revenues from all sources are held in Alabama's Education Trust Fund as earmarked funds, ASSEC likens itself to the Alabama State Bar, an entity which the Eleventh Circuit Court of Appeals has held is an arm of the State of Alabama. (Doc. 90, pp. 21-22) (citing *Nichols*, 815 F.3d at 732). In holding that the Alabama State Bar is an arm of the state, the Eleventh Circuit considered the fact that:

> [t]he State Bar's collection of fees is authorized by the Alabama legislature, those fees are deposited into the state treasury and can be spent only as appropriated by the Alabama legislature, and the Alabama Department of Finance supervises the State Bar's finances. *See* Ala. Code §§ 34–3–3, 34–3–4, 34–3–44, 41–4–2.

*Nichols*, 815 F.3d at 732. ASSEC operates very differently from the Alabama State Bar. As discussed, the Alabama Legislature requires ASSEC to place its revenue in

its own treasury, not in the state treasury. Ala. Code § 41-9-432 (11).[13] ASSEC creates its own budget without state oversight and spends its revenue as it sees fit. Thus, the *Nichols* opinion does not warrant a finding that ASSEC is an arm of the state.

ASSEC also cites *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518 (11th Cir. 1983), to support its argument that it is an arm of the state. (Doc. 90, pp. 22-23). In *Fouche*, the Eleventh Circuit, applying Georgia law, held that a Georgia park authority was an arm of the State of Georgia. 713 F.2d at 1522. As in *Nichols*, in reaching its holding, the Eleventh Circuit evaluated the extent to which the park authority operated independently of the State of Georgia. The Court of Appeals stated: "Even though the Park Authority can raise money through the issuance of bonds and from the operation of Jekyll Island State Park, its fiscal life is controlled by the state." *Fouche*, 713 F.2d at 1522.

As to fiscal control, the Eleventh Circuit considered the State of Georgia's involvement in the park authority's budget process. Like ASSEC, the park authority had to submit its budget for review by the State of Georgia. 713 F.2d at 1520. Unlike ASSEC, the park authority's budget was "submitted to the General Assembly as part

---

[13] Although ASSEC argues that the Governor reports ASSEC's revenues as earmarked funds in the Education Trust Fund and provides evidence that supports the reporting argument, (Docs. 87-11, 87-12), ASSEC has not stated that it actually places its revenue in the Education Trust Fund. The omission suggests that ASSEC may, in fact, follow the directive of the Alabama Legislature and hold its revenues in the ASSEC treasury.

of the Department of Natural Resources' budget." 713 F.2d at 1520. Again, ASSEC does not have to submit its budget to the State of Alabama for approval. The Eleventh Circuit also considered the extent to which the State of Georgia was involved in contracts to which the park authority was a party. The Court of Appeals explained: "All leases granted by the Park Authority are deemed to be contracts between the individual lessee, the Authority, and the state of Georgia. O.C.G.A. § 12–3–249(d). The General Assembly must approve the sale of specified lands on Jekyll Island. O.C.G.A. § 12–3–248." 713 F.2d at 1521. The State of Alabama is not a party to ASSEC leases, and ASSEC can sell property without the approval of the State. Ala. Code § 41-9-432.

There are similarities between the way in which the park authority operated relative to the State of Georgia and the way in which ASSEC operates relative to the State of Alabama, but there are important differences too. Perhaps the most important difference between *Fouche* and this case is the fact that Alabama law governs ASSEC's status. In *Fouche*, the Eleventh Circuit pointed out that although no court had examined the park authority's status for purposes of sovereign immunity under Georgia law, courts had examined the status of other state authorities and had determined that the Georgia Building Authority and the Hospital Authority were arms of the State of Georgia. *Fouche*, 713 F.2d at 1522. The Court of Appeals stated: "Although Georgia authorities are both instrumentalities and

public corporations, case law demonstrates that they are assumed to possess sovereign immunity." 713 F.2d at 1522. As discussed, the Alabama Supreme Court has reached an opposite conclusion. The Alabama Supreme Court has held that Alabama's Hospital Authority is separate from the State of Alabama, *Hill Rom*, 545 So. 2d at 1326; the Alabama Building Renovation Finance Authority is separate from the State of Alabama, *Stallings & Sons*, 689 So. 2d at 793; and the Alabama Legislature separately incorporated public entities like the Health Care Authority and the Alabama Space Science Exhibit Finance Authority, so that those entities could function independent of state and local authorities, *Hill Rom*, 545 So. 2d at 1326; *Stallings & Sons*, 689 So. 2d at 792-93. The Eleventh Circuit's decision in *Fouche* does not dictate a finding here that ASSEC is an arm of the State of Alabama.

ASSEC generates the vast majority of its operating revenues, and ASSEC pays all of its significant operating expenses with those revenues so that ASSEC, a public entity separate from the State of Alabama, may serve the citizens of Alabama without reliance on state funding. *Hill Rom*, 545 So. 2d at 1326. This financial independence indicates that ASSEC is not an arm of the State of Alabama.

### 4. A Judgment Against ASSEC will not Affect the State of Alabama

In the 2016 Order, the Court stated:

> ASSEC's enabling statue does not state explicitly whether ASSEC or the State of Alabama is responsible for judgments against the Commission; however, ASSEC has its own treasury and may 'allocate and expend funds from all donations, income and revenue

from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities . . . ." Ala Code. § 41-9-432(11). This provision suggests, and ASSEC has not disputed, that the Commission, and not the State of Alabama, is responsible for judgments against ASSEC. The Court has no information before it to suggest that any entity other than ASSEC would be responsible for paying a judgment against the Commission. Accordingly, the Court finds that a judgment against ASSEC would not "adversely affect the state treasury." [*Armory Commission of Alabama v.*] *Staudt*, 338 So. 2d [991,] 994 [(Ala. 1980)]; *but see Nichols*, 815 F.3d at 732-33 (11th Cir. 2016) ("Judgments against the State Bar will be paid out of its state treasury fund, but only 'as budgeted and allotted' by the Alabama legislature, potentially affecting the treasury as a whole.") (internal citation omitted).

(Doc. 52, pp. 13-14).

On the current record, ASSEC argues that because its "finances and property are intertwined with the State budget, any money judgment against the agency would adversely affect the State treasury." (Doc. 90, p. 21). The Court has discussed at length the difference between paper accounting and ASSEC's statutory obligations with respect to its revenues. The current record does not change the Court's analysis. If Odysseia were to successfully litigate its counterclaims against ASSEC, ASSEC could pay that judgment from its operating revenues. The State of Alabama would not be liable for a judgment for damages against ASSEC.[14]

---

[14] ASSEC cites *University of South Florida Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234 (11th Cir. 2017), for the proposition that the State of Alabama would have to pay a damages judgment against ASSEC. (Doc. 90, pp. 21-22). In *University of South Florida*, the Eleventh Circuit held that the State of Florida ultimately paid for the judgments against the University of South Florida Board of Trustees. 861 F.3d at 1236-37. The Eleventh Circuit stated that despite the board of trustees' ability to "enter into contracts, sue and be sued, implead and be implead, and therefore hold property and have judgments entered against them," the state "ultimately" paid for such

**CONCLUSION**

ASSEC has established that it is a public entity, but it has not demonstrated that it is an arm of the state of Alabama. The evidence indicates that ASSEC is an entity separate from the state. Therefore, ASSEC is a citizen for purposes of diversity of citizenship jurisdiction, and ASSEC and Odysseia are completely diverse. Accordingly, the Court denies ASSEC's motion for summary judgment (Doc. 89) as it relates to subject matter jurisdiction. By a separate memorandum opinion and order, the Court will address the remaining issues raised in ASSEC's summary judgment motion.

**DONE** and **ORDERED** this September 16, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

judgments by funding the university's activities in general and mandating the university's enrollment in risk-management insurance. *Univ. of S. Fla.*, 861 F.3d at 1236-37. The Court of Appeals explained that the Florida Legislature funded the university's budget, and the Florida Board of Governors secured a comprehensive general liability insurance for state universities. *Univ. of S. Fla.*, 861 F.3d at 1236. By statute, the board of trustees had to maintain coverage under a "State Risk Management Trust Fund." *Univ. of S. Fla.*, 861 F.3d at 1236-37. As discussed at length, the State of Alabama funds only a very small part of ASSEC's activities, and ASSEC has no similar obligation to participate in a state risk fund.